UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ABDI WALI DIRE,**

**Petitioner,**

**v.**

**Civil Case No. 13cv717**
**Criminal No. 2:10cr56**

**UNITED STATES OF AMERICA,**

**Respondent.**

**OPINION AND ORDER**

This matter is before the Court on Abdi Wali Dire's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). ECF No. 371. Petitioner's § 2255 Motion presents two primary ineffective assistance of counsel claims. Petitioner also asserts three additional ineffective assistance of counsel arguments in his Reply brief. After reviewing the briefs and case file, the Court finds that an evidentiary hearing is unnecessary because the record conclusively demonstrates that Petitioner is not entitled to relief in his § 2255 Motion. See R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a). For the reasons discussed below, Petitioner's motion is **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2010, the USS Nicholas, a United States Navy frigate, was on a counter-piracy mission in the Indian Ocean between Somalia and the Seychelles. In the early morning, Petitioner, Gabul Abdullahi Ali, and Mohammed Modin Hasan approached the Nicholas in an attack skiff ("the attack skiff"), believing that the Nicholas was a merchant vessel. While Petitioner, Ali, and Hasan operated the attack skiff, Abdi Mohammed Umar and Abdi Mohammed Gurewardher (collectively with Petitioner, Ali, and Hasan, "Defendants") remained on a larger mother ship ("the mother ship") some distance away. After firing on the Nicholas with assault rifles, Petitioner, Ali, and Hasan quickly learned that they had unwittingly attacked a naval vessel when the crew of the Nicholas responded in kind. Following a short exchange of gunfire, Petitioner, Ali, and Hasan fled in the attack skiff. The Nicholas pursued the attack skiff, and captured it, Petitioner, Ali, and Hasan. During the pursuit, the crew of the Nicholas spotted on the horizon a flashing light emanating from the mother ship. Once the Nicholas had seized the attack skiff, its crew destroyed the attack skiff because the Nicholas did not have the capability to bring the skiff aboard the vessel and towing the skiff would have jeopardized the vessel's ability to pursue the mother ship.

The Nicholas then pursued and captured the mother ship, Umar, and Gurewardher.

On July 7, 2010, Defendants were indicted by a federal grand jury on fourteen counts. Specifically, Petitioner was charged with: Piracy under the Law of Nations (Count One); Attack to Plunder a Vessel (Count Two); Act of Violence Against Persons on a Vessel (Count Three); Conspiracy to Perform an Act of Violence Against Persons on a Vessel (Count Four); Assault with a Dangerous Weapon in the Special Maritime Jurisdiction (Counts Five and Six); Assault with a Dangerous Weapon on Federal Officers and Employees (Counts Seven and Eight); Conspiracy Involving a Firearm and a Crime of Violence (Count Nine); Using, Carrying, and Possessing a Firearm in Relation to a Crime of Violence (Counts Ten and Eleven); Using, Carrying, and Possessing a Destructive Device in Relation to a Crime of Violence (Count Twelve); Carrying an Explosive During the Commission of a Felony (Count Thirteen); and Conspiracy to Carry an Explosive During the Commission of a Felony (Count Fourteen).

Prior to trial, Petitioner moved to suppress statements made to NCIS agent Michael Knox, and other crew members of the USS Nicholas, while Petitioner was detained, because he had not effectively waived his Fifth Amendment rights. ECF No. 87. The Court denied Petitioner's motion to suppress. United States v.

Hasan, 747 F. Supp. 2d 642, 656 (E.D. Va. 2010). After determining that the Government only sought to introduce statements that Petitioner made to Agent Knox on April 4, 2010, the Court found that Agent Knox's Miranda warnings and "cleansing statement" given prior to the April 4th interview were sufficient. Id. Additionally, the Court found that, based on the totality of the evidence, Petitioner knowingly and intelligently waived his Fifth Amendment right against self-incrimination. Id.

Defendants were found guilty on all counts after an eleven-day jury trial. The Court sentenced Petitioner to a total term of imprisonment of life plus nine hundred sixty months.[1] The United States Court of Appeals for the Fourth Circuit affirmed Petitioner and co-defendants' convictions, in a published opinion, on May 23, 2012. United States v. Dire, 680 F.3d 446 (4th Cir. 2012). On January 22, 2013, the United States Supreme

[1] More specifically, the Court imposed a mandatory life sentence on Count One, one hundred twenty (120) months on Count Two, two hundred forty (240) months on Count Three, two hundred forty (240) months on Count Four, one hundred twenty (120) months on Count Five, one hundred twenty (120) months on Count Six, two hundred forty (240) months on Count Seven, two hundred forty (240) months on Count Eight, two hundred forty (240) months on Count Nine, and two hundred forty (240) months on Count Fourteen, all to be served concurrently to each other and to the Life term; as well as three hundred (300) months on Count Ten, three hundred (300) months on Count Eleven, and three hundred sixty (360) months on Count Twelve, all to be served consecutively to the concurrent terms and to each other. The Court dismissed Count Thirteen as multiplicious on March 9, 2011. Opinion and Order, ECF No. 296.

Court denied Petitioner's petition for a writ of certiorari. Dire v. United States, 133 S. Ct. 982 (2013).

Petitioner timely filed his § 2255 motion. ECF No. 371. The Court ordered the Government to file a response to Petitioner's motion, and it did so on May 19, 2014. ECF No. 391. The Court granted Petitioner an enlargement of time to file his Reply, and Petitioner filed his Reply on January 16, 2015, ECF No. 408. Accordingly, this matter is ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's

recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). The existence of the right to pursue a collateral attack via a § 2255 motion does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999)(citing Sunal v. Large, 332 U.S. 174, 177 (1947)).

Although a petitioner advancing new claims asserted for the first time in a § 2255 motion must generally "clear a significantly higher hurdle than would exist on direct appeal" United States v. Frady, 456 U.S. 152, 166 (1981), a freestanding claim of ineffective assistance of counsel is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866,

871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and is often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (citing Massaro v. United States, 538 U.S. 500, 504-06, (2003)).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

**III. DISCUSSION**

As noted above, Petitioner raises two primary ineffective assistance of counsel claims: defense counsel's alleged failure (1) to adequately seek to suppress Petitioner's statements, made while Petitioner was detained on the USS Nicholas, and (2) to object to Petitioner's sentence as a violation of the Eighth Amendment. In addition, in his Reply brief,[2] Petitioner appears to allege that counsel provided him constitutionally deficient assistance: by failing to challenge the Court's lack of jurisdiction; by failing to object to a lack of standing; and by

---

[2] The Court notes that Petitioner may not raise new arguments in a reply brief to which the Government has had no opportunity to respond. United States v. Cox, 7 F.3d 1458, 1463 (9th Cir. 1993); See Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 195 (D.C. Cir. 1992) (noting that consideration of new arguments raised for the first time in a reply would be "manifestly unfair" to the respondent). However, considering the subject matter of Petitioner's new claims, the Court does not find it necessary to order Respondent to file a sur-reply.

failing to challenge adjudication by a court and a judge who were not constituted or authorized under Article III of the Constitution. The Court will address each of Petitioner's contentions in turn.

**A. Inadequate Motion to Suppress**

Petitioner first asserts that defense counsel provided ineffective assistance because he presented an inadequate motion to suppress. Petitioner argues that counsel's motion to suppress was inadequate because counsel "fail[ed] to move to suppress statements obtained in violation of [Petitioner's] 5th and 6th [A]mendment rights" pursuant to the Supreme Court's ruling in Missouri v. Siebert, 542 U.S. 600 (2004). Reply to Gov't's Resp., 9, ECF No. 408. The Supreme Court held in Missouri v. Siebert that Miranda warnings, intentionally given mid-interrogation, after an officer sought an unwarned confession, were ineffective. Siebert addressed the practice of deliberately eliciting a confession from a defendant, and then re-interviewing the defendant within the same period of interrogation with the requisite Miranda warnings to obtain the incriminating statement again. The Supreme Court found that such a practice was calculated to misrepresent the significance of a Miranda warning and it undermined a defendant's knowing and

voluntary waiver of his Fifth Amendment right against self-incrimination.

Petitioner has failed to demonstrate that counsel's motion to suppress Petitioner's statements, without reliance on Siebert, fell below the objective standard of reasonableness under Strickland's performance prong for two reasons. First, as noted above, Petitioner's counsel filed a motion to suppress Petitioner's statements taken aboard the USS Nicholas. Counsel argued the motion through two days of evidentiary hearings. Counsel premised his suppression motion on several solid legal principles, see ECF No. 87, and his decision not to employ the Supreme Court's ruling in Siebert appears to be a tactical or strategic choice. It is a well-established maxim that, in a criminal case, defense counsel has the authority to manage many aspects of the defense without approval of the defendant, to include motions practice and decisions regarding strategy and tactics. United States v. Chapman, 593 F.3d 365, 367-68 (4th Cir. 2010); see Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (indicating that defense counsel has no duty to file meritless motions at Petitioner's request). As recently explained by the Fourth Circuit:

> Attorneys can be selective and strategic without risking an ineffective assistance of counsel claim. We have consistently made clear that we do not

> penalize attorneys for failing to bring novel or long-shot contentions. Attorneys exist to exercise professional judgment, which often involves setting priorities. Indeed, it can be positively detrimental to a client's chances not to set priorities but rather to scattershot the case by raising every [possible] objection . . . .

United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) (internal citations omitted) (emphasis added).

Second, as the Government notes in its Response, the circumstances in Siebert differ significantly from those present in this case. Unlike the officer in Siebert, there is no evidence that Agent Knox intentionally withheld Miranda warnings from Petitioner to obtain a confession; Agent Knox's interrogation was broken up over several days; and Agent Knox provided Miranda warnings and a "cleansing statement," which the Court found was sufficient, prior to the April 4, 2010 interview statements to which Petitioner objects. See Siebert, 542 U.S. at 616-17. Accordingly, Petitioner has not rebutted the strong presumption that counsel's reliance on alternative legal principles to support his motion to suppress fell within the wide range of reasonable professional conduct. Strickland, 466 U.S. at 689.

Petitioner's claim that counsel was ineffective for failure to rely on Siebert in a motion to suppress also fails because he has not satisfied the prejudice prong of Strickland. Even if

defense counsel's performance was objectively unreasonable, Petitioner has not demonstrated that he suffered prejudice due to counsel's actions because the Court would have denied such a motion to suppress. The Court evaluated whether adequate Miranda warnings were given on the Nicholas. In its evaluation, the Court addressed the timeline of Agent Knox's interrogation on the Nicholas, and additional information Agent Knox received from previous unwarned statements, and found that Agent Knox's Miranda warnings and "cleansing statement," prior to the April 4, 2010 interviews, were sufficient. Hasan, 747 F. Supp. 2d at 668-69. Further, the Court found that, based on the totality of the evidence, Petitioner knowingly and intelligently waived his Fifth Amendment right against self-incrimination and information from his April 4, 2010 interview was admissible. Hasan, 747 F. Supp. 2d at 669-72. Therefore, Petitioner has not shown "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94.

**B. Eighth Amendment Violation**

Second, Petitioner argues that both his trial and appellate counsel were ineffective because they failed to challenge Petitioner's mandatory life imprisonment sentence for piracy as a violation of the Eighth Amendment. However, Petitioner's

claim fails because he has not satisfied the performance or prejudice prongs of Strickland.

Petitioner argues that his trial and appellate counsel were ineffective based on the ruling in United States v. Said, 3 F. Supp. 3d 515 (E.D. Va. 2014), which found that imposition of a mandatory life sentence for piracy, under 18 U.S.C. § 1651, was grossly disproportionate to the offense and violated the Eighth Amendment. However, since Petitioner's § 2255 Motion became ripe, the Fourth Circuit has reversed the holding in Said, finding that the mandatory life sentence required by 18 U.S.C. § 1651 "'reflects the rational legislative judgment, entitled to deference,' that piracy in international waters is a crime deserving of one of the harshest penalties." United States v. Said, 798 F.3d 182, 199 (4th Cir. 2015) (quoting Ewing v. California, 538 U.S. 11, 30 (2003)). The Fourth Circuit determined that imposition of a life sentence for piracy was not grossly disproportionate to the offense and did not violate the Eighth Amendment. Id. Further, as noted by the Fourth Circuit, "'successful challenges to the proportionality of particular sentences will be exceedingly rare,'" id. at 197 (quoting Solem v. Helm, 463 U.S. 277, 289-90 (1983)), and the Fourth Circuit has not identified a grossly disproportionate life sentence or putative life sentence since the Supreme Court's decision in

Solem v. Helm, id. at 198. Thus, Petitioner has not rebutted the strong presumption that counsel engaged in reasonable professional conduct by failing to raise a challenge to Petitioner's sentence on Eighth Amendment grounds. Further, Petitioner cannot meet the prejudice prong of Strickland because, even if counsel had raised an Eighth Amendment challenge, the Court would have denied it for the very reasons addressed by the Fourth Circuit in its reversal of Said.

**C. Jurisdiction Over Prosecution**

Petitioner next argues that he received ineffective assistance because defense counsel failed to challenge the Court's jurisdiction over Petitioner's prosecution. Petitioner argues that the Court invoked "hypothetical jurisdiction," "judicially decree[d] jurisdiction," and it improperly relied on "the statutory permission approach" for jurisdiction in this case.

The Court denies Petitioner's assertion that counsel's alleged failure to challenge the Court's exercise of jurisdiction constituted ineffective assistance of counsel because Petitioner has not demonstrated that such actions fell below an objective standard of reasonableness or that he suffered prejudice. Counsel's actions meet the objective reasonableness standard because counsel made a merited, although

limited, jurisdictional objection. Petitioner's counsel objected to the Court's application of 18 U.S.C. § 924(c), which prohibits use of a firearm or dangerous weapon in furtherance of a crime of violence, because, unlike other statutes at issue, § 924(c) did not explicitly grant the Court jurisdiction over violations that took place outside of the United States. See Mot. to Dismiss, ECF No. 81. After reviewing the issue, the Court determined that § 924(c) applied extraterritorially in this case, and determined that it had jurisdiction to hear Petitioner's prosecution under § 924(c). Hasan, 747 F. Supp. 2d at 683-84. Further, the Court clearly had jurisdiction over Petitioner's prosecution because Petitioner was charged with violation of a number of U.S. Code provisions that granted the Court jurisdiction. See 18 U.S.C. § 113, 1651, & 1659; United States v. Flores, 289 U.S. 137, 151 (1933) ("The criminal jurisdiction of the United States is wholly statutory."). A reasonable attorney could have determined that a challenge to the entirety of the Court's jurisdiction in the manner sought by Petitioner would have been frivolous. Thus, Petitioner has not demonstrated that counsel failed to engage in reasonable professional conduct.

Petitioner has also failed to demonstrate that counsel's alleged failure to challenge the entirety of the Court's

jurisdiction was prejudicial. Even if counsel had raised a complete jurisdictional challenge, the Court would have denied it based on the explicit jurisdictional grants contained within the statutes that Petitioner was alleged to have violated. Further, when presented with a jurisdictional objection regarding Petitioner's prosecution under 18 U.S.C. § 924(c), the Court determined that § 924(c) would be applied extraterritorially in this case and that it had jurisdiction over Petitioner's prosecution under that statute.

**D. Standing to Bring Suit**

Next, Petitioner claims that he received ineffective assistance because counsel failed to challenge the Government's standing to bring suit under Lujan v. Defenders of Wildlife, 504 U.S. 555, and its requirement that the complainant "prove how the alleged illegal conduct 1) injured him in a personal and particularized manner; 2) [is] traceable to the defendant's own conduct; and 3) that [it] is likely to be redressed by a favorable decision of the court." Resp. to Gov't's Resp., 2, ECF No. 408.

Petitioner has failed to demonstrate that defense counsel's alleged failure to challenge the Government's standing to prosecute an attack on a U.S. Navy vessel was objectively unreasonable or that Petitioner suffered prejudice. Petitioner

provides no reason why the standing requirements of Lujan, a civil case addressing the rights of private parties to bring suit, are applicable in a criminal case where the Government prosecuted multiple violations of the U.S. Code. Petitioner and co-defendants engaged in an armed attack on the USS Nicholas, a U.S. Navy frigate, in violation of multiple sections of the U.S. Code. Petitioner's prosecution and sentencing further the "very 'purpose of a criminal court,'" that is, "'to vindicate the public interest in enforcement of the criminal law.'" Brandt v. Gooding, 636 F.3d 124, 135 (4th Cir. 2011) (quoting Standefer v. United States, 447 U.S. 10, 25 (1980)). Defense counsel's decision not to raise a standing challenge was objectively reasonable. However, even if counsel had raised the issue, Petitioner was not prejudiced because the Court would have denied the motion as frivolous.

**E. Article III Court**

Finally, Petitioner argues that this Court and the undersigned Judge who presided over Petitioner's prosecution were not properly constituted or authorized to hear the case under Article III of the Constitution. The argument that the U.S. District Court for the Eastern District of Virginia is not a properly constituted Article III court is "patently frivolous." United States v. Welsh, 316 F. App'x 222, 224 (4th

Cir. 2008) (unpublished) (determining that appellant's claim that the district court was not an Article III court was "patently frivolous"). Pursuant to its power under Article III, Section 1 of the United States Constitution, Congress properly established the United States District Court for the Eastern District of Virginia. See 28 U.S.C. §§ 127, 132. Therefore, this Court had proper jurisdiction under Article III to hear Petitioner's prosecution, and counsel's alleged failure to raise this issue with the Court was neither objectively unreasonable nor prejudicial to Petitioner.

**IV. CONCLUSION**

For the reasons discussed above, Petitioner's § 2255 Motion is **DENIED**.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If

Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner and to the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 16, 2015